*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1982**

Steven T. Meister, M. D., et al.,
Appellants,

John Does, et al.,
Plaintiffs,

vs.

Avera Marshall d/b/a Avera Marshall Regional Medical Center,
Respondent,

John Roes, et al.,
Defendants

**Filed July 25, 2016
Affirmed
Worke, Judge**

Lyon County District Court
File No. 42-CV-12-69

Eric Magnuson, Katherine S. Barrett Wiik, Chelsea A. Walcker, Robins Kaplan LLP, Minneapolis, Minnesota; and

Robert L. Gjorvad, Runchey, Louwagie & Wellman, PLLP, Marshall, Minnesota (for appellants)

David R. Crosby, Bryant D. Tchida, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Rodenberg, Judge; and Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellants challenge the district court's summary-judgment determination that respondent medical center could unilaterally amend and repeal medical staff bylaws. We affirm.

## FACTS

Respondent Avera Marshall is a nonprofit corporation that owns and operates Avera Marshall Regional Medical Center (the hospital). Appellants Drs. Steven T. Meister, Jane Willett, and Anthony Nwakama (the doctors) practice medicine at the hospital. Avera Marshall's articles of incorporation state that "[t]he general management of the [c]orporation shall be vested in its [b]oard of [d]irectors."

Avera Marshall's corporate bylaws state that Avera Marshall's board of directors shall organize a medical staff under medical staff bylaws "approved by the [b]oard." The corporate bylaws provide the medical staff with "appropriate authority and responsibility for the care of such member's patients, subject to such limitations as are contained in [the corporate bylaws] and in the [medical staff bylaws]."

In 1995, the board approved the medical staff bylaws. The purposes of the medical staff bylaws are:

> (a) To endeavor to provide that all patients, regardless of race, color, religion, national origin, sex, age or disability, receive appropriate medical care from practitioners appointed to the [m]edical [s]taff;
> (b) To strive to maintain and enhance the professional performance of all [m]embers of the [m]edical [s]taff through

2

an ongoing review and evaluation of the clinical performance of each [m]ember of the [m]edical [s]taff in the [hospital];

(c) To provide an appropriate setting that will maintain practice standards and that will lead to a continuous advancement in professional knowledge, skill and training;

(d) To initiate and maintain rules, regulations and policies for the internal governance of the [m]edical [s]taff; and

(e) To provide a means whereby issues concerning the [m]edical [s]taff and the [hospital] may be directly discussed by the [m]edical [s]taff with the [board] and the [a]dministration, with the understanding that the [m]edical [s]taff is subject to the ultimate authority of the [board].

In January 2012, the board unilaterally amended the medical staff bylaws and notified the medical staff. The medical staff, medical executive committee, and the doctors collectively sought declaratory judgment that the medical staff bylaws constitute a contract between Avera Marshall and the medical staff. The plaintiffs also sought declaratory judgment that Avera Marshall could not unilaterally adopt and repeal the medical staff bylaws. The district court concluded that the medical staff bylaws are not a contract, and Avera Marshall could unilaterally modify the medical staff bylaws.

This court affirmed the district court's decision, but the supreme court reversed and remanded, concluding that the medical staff bylaws constitute a contract between Avera Marshall and the individual members of the medical staff. *Med. Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 698, 704 (Minn. 2014). The dissent concluded that the medical staff bylaws did not constitute a contract between the medical staff and Avera Marshall. *Med. Staff of Avera Marshall Reg'l Med. Ctr. v. Avera Marshall*, 857 N.W.2d 695, 709 (Minn. 2014) (Anderson, J., dissenting). On remand, Avera Marshall moved for summary judgment, arguing that the board could

3

unilaterally amend the medical staff bylaws. The district court granted Avera Marshall's motion. This appeal follows.

## D E C I S I O N

*Contract interpretation*

The doctors argue that the district court erred when it granted Avera Marshall's summary-judgment motion because the medical staff bylaws prohibit Avera Marshall from unilaterally adopting, amending, or repealing the medical staff bylaws. An appellate court reviews a district court's summary-judgment decision de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp.*, 790 N.W.2d 167, 170 (Minn. 2010). "In doing so, [an appellate court] determine[s] whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Id.*

"Contract interpretation is a question of law that we review de novo." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009) (quotation omitted). "The primary goal of contract interpretation is to ascertain and enforce the intent of the parties." *Id.* When interpreting a contract, "the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

Relying on article 17.2 of the medical staff bylaws, the doctors argue that the board cannot adopt, amend, or repeal the medical staff bylaws without an affirmative two-thirds vote of the medical staff eligible to vote. We are not persuaded. Accepting the doctors' argument would contradict basic principles of contract interpretation. An appellate court interprets a contract "in such a way as to give meaning to all of its

4

provisions." *Id.* Article 2.1-1(e) of the medical staff bylaws states that the purpose of the medical staff is "[t]o provide a means whereby issues concerning the [m]edical [s]taff . . . may be directly discussed . . . with the understanding that the [m]edical [s]taff is subject to the ultimate authority of the [b]oard." If the medical staff could effectively veto a proposed amendment pursuant to article 17.2, then Article 2.1-1(e) would be meaningless because the medical staff would not be "subject to the ultimate authority of the [b]oard."

On the other hand, Avera Marshall's interpretation of article 17.2 would not lead to meaningless provisions. Avera Marshall argues that article 17.2 applies only to action proposed by the medical staff. In other words, for the medical staff to propose a change to the bylaws, a quorum must be present and two-thirds of the staff eligible to vote must vote in favor of the proposed change. Under this interpretation, the board retains its ultimate authority and the medical staff retains its ability to review and propose changes to the medical staff bylaws.

Additionally, article 16.1(c)(iii) of the medical staff bylaws and article 15.1(a) of the corporate bylaws support Avera Marshall's argument. Article 16.1(c)(iii) of the medical staff bylaws states: "If there is conflict . . . [b]etween . . . the [m]edical [s]taff [b]ylaws and the [corporate bylaws], the [corporate bylaws] shall prevail." Article 15.1(a) of the corporate bylaws states that the board shall organize the medical staff "under medical staff bylaws approved by the [b]oard." Article 15.1(a) does not state that the medical staff bylaws require board *and* staff approval. Thus, even if we accepted the doctors' interpretation of article 17.2, the board would still retain its authority pursuant to

5

article 16.1(c)(iii) because article 17.2 of the medical staff bylaws and article 15.1(a) of the corporate bylaws would conflict.

Finally, Minn. Stat. § 317A.201 (2014) states that the business and affairs of a corporation "must be managed by or under the direction of a board of directors." A hospital's medical staff "shall be responsible . . . for the clinical and scientific work of the hospital. It shall be called upon to *advise* regarding professional problems and policies." Minn. R. 4640.0800, subp. 1 (2015) (emphasis added). These authorities support Avera Marshall's ability to unilaterally amend the medical staff bylaws.

Caselaw from several other states informs us that a corporation's board of directors retain significant discretion to act independently despite the fact that medical staff bylaws constitute a contract between the hospital and its staff. *See Mahan v. Avera St. Luke's*, 621 N.W.2d 150, 161 (S.D. 2001) (stating that the board's action did not constitute a breach because the actions were "permissible under the [c]orporate [b]ylaws and done in good faith"); *see also Bartley v. E. Me. Med. Ctr.*, 617 A.2d 1020, 1022–23 (Me. 1992) (stating that hospital did not breach its contract when the bylaws stated that the staff assumed its responsibilities subject to the authority of the board).

The doctors also argue that the district court's order renders the contract illusory because the board may amend the bylaws unilaterally. This argument is based on the principle of "mutual obligation," which has sometimes been described as: "Both parties must be bound or neither is bound." Restatement (Second) of Contracts § 79 & cmt. f (1981).

6

However, "[t]he concept of mutuality has been widely discredited . . . and it is now generally recognized that the obligations of the parties need not be substantially equal for there to be a binding contract." *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 266 (Minn. 1980). "Minnesota has long recognized the principle that whe[n] a contract is supported by valuable consideration (such as a detriment incurred in exchange for a promise), then a right of one party to terminate it at will does not render it invalid for lack of mutuality." *Id.* (quotation omitted).

Here, as recognized in by our supreme court, the contract is not illusory because both parties exchanged promises constituting valuable consideration. *Avera Marshall*, 857 N.W.2d at 703 n.6. In *Avera Marshall*, the supreme court reasoned:

> To be clear, consideration does not exist simply because the medical staff bylaws exist. Consideration exists because, with the appointment of each member to the [m]edical [s]taff, that member and Avera Marshall both voluntarily assumed an obligation on the condition of an act by the other party—that is, each member of the [m]edical [s]taff agreed to be bound by the medical staff bylaws and Avera Marshall agreed to let each member of the [m]edical [s]taff practice at its hospital.

*Id.*

Therefore, the district court did not err when it granted summary judgment in favor of Avera Marshall, concluding that Avera Marshall has authority to unilaterally amend the medical staff bylaws.

***Supreme court mandate***

The doctors argue that the district court erred by following the framework of the dissent in *Avera Marshall*. "[W]hen an appellate court has ruled on an issue, the issue

decided becomes the law of the case and may not be relitigated or re-examined." *Kissoondath v. U.S. Fire Ins. Co.*, 620 N.W.2d 909, 917 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. Apr. 17, 2001). On remand, a district court cannot "alter, amend, or modify" an appellate court's mandate. *Halverson v. Vill. of Deerwood*, 322 N.W.2d 761, 766 (Minn. 1982).

The supreme court in *Avera Marshall* considered: (1) whether the medical staff had capacity to sue, and (2) whether the medical staff bylaws constitute an enforceable contract. 857 N.W.2d at 698–99. The supreme court recognized Avera Marshall's argument that it could unilaterally amend bylaws, *id.* at 701, but it did not address the argument, *id.* at 700–704.

Here, the district court repeatedly recognized that the medical staff bylaws constitute a contract between the medical staff and Avera Marshall. The district court simply took the next step and analyzed whether the contract permitted the board to unilaterally amend the medical staff bylaws. Additionally, the district court's reference to the dissent as "well-reasoned and persuasive" was not erroneous. *See In re Welfare of B.R.K.*, 658 N.W.2d 565, 576 (Minn. 2003) ("We view the dissent's reasoning as being particularly persuasive."); *see also Jennie-O Foods, Inc. v. Safe-Glo Prods. Corp.*, 582 N.W.2d 576, 579 (Minn. App. 1998) ("We find persuasive . . . the well-reasoned dissent in *Regents*."), *review denied* (Minn. Oct. 20, 1998). Therefore, the district court did not err because it did not alter, amend, or modify the supreme court's mandate.

**Affirmed.**